TOSI, Appellee,

v.

JONES, Appellant, et al.; Michaels et al., Appellees.

[Cite as *Tosi v. Jones* (1996), 115 Ohio App.3d 396.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE04–500.

Decided Oct. 24, 1996.

*Carlile, Patchen & Murphy, Laurence E. Sturtz* and *Alan F. Berliner,* Columbus, for plaintiff-appellee and third-party defendants-appellees.

*Andrew J. Michaels* and *Daniel J. McGown,* for appellant.

---

Bowman, Judge.

Defendant-appellant, John David Jones, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of plaintiff-appellee, Donald J. Tosi, Ph.D., and third-party defendants-appellees, V.V. Rajadhyaksha, DLZ Corporation, the law firm of Carlile, Patchen & Murphy, Dwight I. Hurd, Laurence E. Sturtz, and Alan F. Berliner.

DLZ Corporation ("DLZ") is an engineering and surveying firm headquartered in Columbus, Ohio. Appellant is a minority shareholder of DLZ and was, until January 1995, the President of JDJ & A, Inc. ("JDJ & A"), a subsidiary of DLZ. As president of JDJ & A, appellant was a member of DLZ's executive committee. V.V. Rajadhyaksha is the principal stockholder and chief executive officer of DLZ. Donald J. Tosi is a practicing psychologist who provides consulting services to DLZ. The law firm of Carlile, Patchen & Murphy and Dwight I. Hurd, Laurence E. Sturtz, and Alan F. Berliner, serve as DLZ's corporate counsel.

In January 1995, DLZ terminated appellant's employment as president of JDJ & A. Subsequently, appellant filed five separate actions against appellees in the Summit County Court of Common Pleas.

On February 13, 1995, appellant, in his capacity as a minority shareholder of DLZ, sent DLZ a letter alleging that certain named officers, employees and advisors of DLZ had engaged in unlawful spending and accounting practices for which the corporation was entitled to restitution. Tosi, Rajadhyaksha and Hurd were among the individuals specifically named in the letter.

On February 21, 1995, Tosi brought a defamation action against appellant and appellant's attorney, Andrew J. Michaels, alleging that appellant's letter of February 13, 1995, had defamed him, and seeking damages of $500,000 from appellant and $5,000,000 from Michaels. Tosi was represented in his action by Carlile, Patchen & Murphy, Sturtz, and Berliner.

On March 23, 1995, appellant filed his answer together with a counterclaim against Tosi, and a third-party complaint against DLZ, Rajadhyaksha, Carlile, Patchen & Murphy, Hurd, Sturtz, and Berliner. Count I of appellant's counterclaim/third-party complaint alleges that appellees engaged in the torts of champerty and maintenance by encouraging and supporting Tosi in bringing a baseless defamation action as part of a scheme to prevail in the Summit County lawsuits

by exhausting appellant's financial resources. Count II of appellant's counterclaim/third-party complaint alleges that appellees conspired to tortiously interfere in appellant's lawyer-client relationship with Michaels in an attempt to prevent him from prosecuting his Summit County actions.

Appellees answered appellant's counterclaim/third-party complaint, and DLZ filed a counterclaim alleging negligence and breach of fiduciary duty by appellant during his tenure as president of JDJ & A.

On November 28, 1995, appellees jointly moved for summary judgment on appellant's counterclaim/third-party complaint. Also, on November 28, 1995, appellant and Michaels moved separately for summary judgment on Tosi's and DLZ's claims against them.

On December 5, 1995, Tosi and DLZ voluntarily dismissed their claims against appellant and Michaels without prejudice.

On December 12, 1995, appellant filed a memorandum opposing appellee's motion for summary judgment accompanied by affidavits, depositions and exhibits. On the same day, appellant also filed a motion for sanctions pursuant to R.C. 2323.51.

On January 2, 1996, appellees filed a memorandum opposing appellant's motion for sanctions, arguing that appellant had failed to provide the necessary factual support for his motion. On January 17, 1996, appellant filed the evidentiary materials he had previously filed in support of his motion for summary judgment, in support of his motion for sanctions.

On March 25, 1996, the trial court issued a decision and entry granting summary judgment for appellees on Count I of appellant's counterclaim/third-party complaint, dismissing Count II of appellant's counterclaim/third-party complaint without prejudice, overruling appellant's motion for sanctions, and disposing of all other matters in the case. Appellant appeals therefrom, assigning the following errors:

"I. The trial court erred in granting summary judgment against appellant, dismissing count one of appellant's counterclaims and third party complaint, based solely upon the trial court's holding that the common law does not recognize champerty or maintenance as torts.

"II. The trial court erred in denying appellant's motion for attorney fees and costs, made pursuant to O.R.C. § 2323.51, without conducting an evidentiary hearing where the motion presented an arguable basis for such an award."

Appellant's first assignment of error challenges the trial court's grant of summary judgment for appellees on Count I of appellant's counterclaim/third-party complaint for champerty and maintenance.

In granting summary judgment for appellees on Count I of appellant's counterclaim/third-party complaint, the trial court held that the torts of champerty and maintenance are not recognized as causes of action under Ohio law.

" 'The doctrines of champerty and maintenance were developed at the common law to "prevent officious intermeddlers from stirring up strife and contention by vexatious and speculative litigation which would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of the law." 14 C.J.S. Champerty and Maintenance § 3; *Curry v. Dahlberg*, 341 Mo. 897, 110 S.W.2d 742, 748, 112 S.W.2d 345 (banc 1937). Maintenance is defined as "an officious intermeddling in a suit which in no way belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it." *Moffett v. Commerce Trust Company*, 283 S.W.2d 591, 596 (Mo.1955). Champerty, a species of maintenance, consists of an agreement under which a person who has no interest in the suit of another undertakes to maintain or support it at his own expense in exchange for part of the litigated matter in the event of a successful conclusion of the cause.' " *Finders Diversified, Inc. v. Baugh* (Apr. 20, 1984), Lucas App. No. L–83–424, unreported, 1984 WL 7841, at 4, quoting *Schnabel v. Taft Broadcasting Co., Inc.* (Mo.App.1975), 525 S.W.2d 819, 823.

At common law, an action for damages based upon the doctrines of champerty and maintenance was recognized in some jurisdictions. See *Golden Commissary Corp. v. Shipley* (D.C.Mun.App.1960), 157 A.2d 810, 813, 14 American Jurisprudence 2d (1964) 853, Champerty and Maintenance, Section 17. Although the doctrines of champerty and maintenance appear in numerous Ohio cases as contract defenses (see *Reece v. Kyle* [1892], 49 Ohio St. 475, 31 N.E. 747; *Stewart v. Welch* [1885], 41 Ohio St. 483; *Key v. Vattier* [1823], 1 Ohio 132; *LoGuidice v. Harris* [1954], 98 Ohio App. 230, 57 O.O. 263, 128 N.E.2d 842; *Rice v. Pigman* [1953], 94 Ohio App. 122, 51 O.O. 313, 114 N.E.2d 738; *Finders Diversified, supra* ), our research has failed to disclose a single Ohio case which recognizes a cause of action in tort arising out of these ancient doctrines, and appellant has cited none. We thus conclude that Ohio has never recognized a common-law tort for champerty and maintenance.

However, even if a common-law tort action for champerty or maintenance was recognized in Ohio at one time, that cause of action has, in modern times, been supplanted by the tort actions for malicious prosecution and abuse of process, the frivolous-conduct statute, R.C. 2323.51, and the disciplinary procedures for attorney misconduct provided for by Gov.Bar.R. V and the Code of Professional Responsibility. See *Schnabel v. Taft Broadcasting Co., Inc.* (1975), 525 S.W.2d 819, 824; *Security Underground Storage, Inc. v. Anderson* (C.A.10, 1965), 347 F.2d 964, 969; *Mahoning Cty. Bar Assn. v. Ruffalo* (1964), 176 Ohio St. 263, 265,

27 O.O.2d 161, 162–163, 199 N.E.2d 396, 398–399. Appellant's first assignment of error is overruled.

Appellant's second assignment of error challenges the trial court's decision to deny his motion for sanctions, pursuant to R.C. 2323.51, without holding a hearing on the motion.

██ This court has consistently held that R.C. 2323.51 does not require a trial court to conduct a hearing before denying a motion for an award of reasonable attorney fees. *Justice v. Lutheran Social Serv. of Cent. Ohio* (1992), 79 Ohio App.3d 439, 444, 607 N.E.2d 537, 539–540; *Victoria's Garden v. Sheehy* (July 27, 1993), Franklin App. No. 93AP–404, unreported, 1993 WL 302835; *CM Newspapers, Inc. v. Dawson* (Jan. 28, 1992), Franklin App. No. 91AP–1067, unreported, 1992 WL 15257. A court must schedule a hearing only on those motions which demonstrate arguable merit. *Justice.* Where a trial court determines that there is no basis for the imposition of sanctions, it may deny the motion without a hearing. *Id.*

In the present case, the trial court did not reach the issue of whether appellant's motion for sanctions demonstrated arguable merit. Rather, the court denied the motion solely on the basis that the motion did not satisfy the particularity requirement of Civ.R. 7(B).

Civ.R. 7(B)(1) provides in part as follows:

"A motion, whether written or oral, shall state with particularity the grounds therefor, and shall set forth the relief or order sought."

██ Appellant's motion for sanctions expressly alleged that Tosi's and DLZ's claims against him were brought to "harass and maliciously injure" him, and that the claims were "not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law." Although couched in terms of the statute, this language was sufficient to put both appellees and the trial court on notice regarding the grounds for plaintiff's request for attorney's fees under R.C. 2323.51. Civ.R. 7(B)(1) requires a particularized statement only of the grounds for the motion; it does not require the movant to provide a list of the evidence in support of those grounds.

██ Given that appellant's motion satisfied Civ.R. 7(B)(1), this matter must be remanded to the trial court to determine whether the motion warrants an evidentiary hearing. Appellant's second assignment of error is sustained to the extent indicated.

Having overruled appellant's first assignment of error, but having sustained, to the extent indicated, appellant's second assignment of error, we affirm the

judgment of the trial court in part, reverse it in part, and remand the matter for further proceedings in accordance herewith.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

JOHN C. YOUNG and TYACK, JJ., concur.