OPINION
{¶ 1} Lofino Properties and John Chmiel are appealing the judgment of the Greene County Common Pleas Court, which granted summary judgment on their complaint to Wal-Mart Corporation, RG Properties, Herbert Papcock, and the Estate of Wiley Tuttle.
 {¶ 2} Herbert Papcock and the Estate of Wiley Tuttle are the owners of Sugarcreek Plaza, a shopping center located in Sugarcreek Township in Greene County, Ohio. This shopping center is managed by R.G. Properties. Wal-Mart Corporation leases a portion of the shopping center wherein it operates a retail store. Wal-Mart sought to expand its retail store in order to include a grocery store. Therefore, in April of 2002, R.G. Properties applied for and received a zoning permit from Sugarcreek Township allowing for the expansion of the store.[1] In order to accomplish this expansion, an additional 2.32 acres of property was needed. This additional acreage was already zoned PD-B2.
 {¶ 3} On July 5, 2002, John Chmiel filed an original action against Wal-Mart and the Sugarcreek Township Board of Trustees asserting a claim for declaratory relief in an attempt to prevent the planned expansion of the Wal-Mart store. Papcock, R.G. Properties, and Tuttle were not named in Chmiel's suit and moved to intervene in that action. After the court granted the intervention, the intervening parties filed a motion to dismiss or in the alternative, summary judgment. In October of 2002, Chmiel voluntarily dismissed his suit.
 {¶ 4} On November 26, 2002, Chmiel and Lofino Properties, LLC filed an identical suit seeking declaratory relief against Wal-Mart and Sugarcreek Township Board of Trustees. The Plaintiffs/Appellants alleged that as a result of the planned expansion the value of their property would be reduced, the expansion was not in conformity with the applicable zoning restrictions, that the expansion proposal had not been properly designed nor submitted for zoning approval, and that there needed to have first been a hearing conducted by the Township's Zoning Authority for the purpose of reviewing the plans for expansion prior to the commencement of the development project. Again, Papcock, R.G. Properties and Tuttle had to intervene to join the suit. On January 17, 2003, the intervening parties filed a motion to dismiss or in the alternative a motion for summary judgment. On February 11, 2003, Plaintiffs/Appellants filed a memorandum contra to the motion to dismiss or in the alternative motion for summary judgment and an amended complaint.
 {¶ 5} A three day evidentiary hearing was held before a magistrate and on April 10, 2003, the magistrate issued a decision granting Defendants' motion for summary judgment. Objections were filed and the trial court overruled the objections and adopted the judgment of the magistrate. Subsequently, the Intervening Defendants/Cross-Appellants moved for attorney fees pursuant to R.C. 2323.51 and Rule 54(D), which the trial court overruled without waiting for a response from the Plaintiffs/Appellants or without holding a hearing. Both the Plaintiffs, Chmiel and Lofino Properties, and the Intervening Defendants, Papcock, R.G. Properties, and Tuttle, have filed an appeal from the judgment of the trial court.
 {¶ 6} Plaintiffs/Appellants raise the following assignments of error:
 {¶ 7} "[1.] The trial court erred in granting summary judgment in favor of defendants and denying plaintiffs' motion for injunction because the mandatory review and approval process for the creation or amendment of a planned development was not followed in this case.
 {¶ 8} "[2.] The trial court erred in granting summary judgment to defendants and denying plaintiffs' motion for injunction where the plan for the expanded wal-mart store violated the sugarcreek township zoning resolution because it did not provide the required number of parking spaces.
 {¶ 9} "[3.] The trial court erred in dismissing plaintiff John Chmiel for lack of standing.
 {¶ 10} "[4.] The magistrate erred by allowing tony preston to testify as an expert witness in planned development zoning matters."
 {¶ 11} The Intervening Defendants/Cross-Appellants raise the following in their cross-appeal.
 {¶ 12} "[1.] The trial court erred by failing to grant the intervening defendants' motion to dismiss/summary judgment and dismiss the lofino claims pursuant to Orc 519.15; and by permitting the plaintiffs-appellants to proceed pursuant to Orc519.24.
 {¶ 13} "[2.] The trial court erred by finding that Lofino Properties had standing as a party in interest to bring a claim pursuant to Orc 519.24.
 {¶ 14} "[3.] The trial court erred by failing to find that the lofino claims were barred by the doctrine of laches and estoppel.
 {¶ 15} "[4.] The trial court erred by failing to award attorney fees and costs to the defendants."
Plaintiffs/Appellants' first assignment of error
 {¶ 16} Plaintiffs/Appellants argue that the trial court erred in granting Defendants' motion for summary judgment based upon its conclusion that all the requirements in the Sugarcreek Township Zoning Resolution were complied with in the grant of the zoning permit for the construction of the Wal-Mart expansion. We disagree.
 {¶ 17} R.C. 519.021 permits townships to adopt planned-unit development regulations so long as the regulations apply to property only at the election of the landowner and include standards that can be used to approve or disapprove any proposed development within the planned-unit development. One procedure by which the township may include planned-unit developments is to have the board of trustees adopt planned-unit development regulations that establish standards that apply to property that becomes a planned-unit development but do not automatically apply to any property in the township. R.C. 519.021(A). Then, property owners who want the planned-unit development regulations to apply to their property can apply to have their property rezoned into a planned-unit development. Id. All subsequent development on this rezoned property is subject to the planned-unit regulations. Id.
 {¶ 18} However, R.C. 519.24 provides:
 {¶ 19} "In case any building is or is proposed to be located, erected, constructed, reconstructed, enlarged, changed, maintained, or used or any land is or is proposed to be used in violation of sections 519.01 to 519.99, inclusive, of the Revised Code, or of any regulation or provision adopted by any board of township trustees under such sections, * * * any adjacent or neighboring property owner who would be especially damaged by such violation, in addition to other remedies provided by law, may institute injunction, mandamus, abatement, or any other appropriate action or proceeding to prevent, enjoin, abate, or remove such unlawful location, erection, construction, reconstruction, enlargement, change, maintenance, or use."
 {¶ 20} Article 8 of the Sugarcreek Township Zoning Regulations provides that it is intended to permit the creation of Planned Development Districts. Section 8.01. Section 8.17 of Article 8 of the Zoning Regulations describes the "PD-B" or Planned Business District, listing its principal permitted uses, the development standards, and the requirements for parking and loading in this district. For PD-B2 districts, section 8.17 permits the uses and height restrictions applicable to the B-2 zoning districts. A B-2 district is referred to as a Neighborhood Business District and permits such principal uses as banks, department stores, apparel shops, supermarkets, and restaurants. Section 6.02. Moreover, the regulations provide that the maximum permitted height for buildings in B-2 districts are two and one-half stories or 35 feet. Section 6.06. Additionally, 8.17 limits the total land occupancy by building to 60% of the tract and requires that a minimum of 20% of the land area not be used or occupied by automotive vehicles, but be reserved for landscaping. Therefore, the Sugarcreek Township Zoning Regulations have provided standards governing planned-unit development pursuant to R.C. 519.021(A).
 {¶ 21} The area at issue in this matter was rezoned into a PD-B2 district in 1995. Although we have very little evidence in the record before us regarding the proceedings surrounding this event, the Official Zoning Map for Sugarcreek Township shows that the 2.32 acres at issue was zoned PD-B2 at the time of the application for the zoning permit. Absent "evidence to the contrary, it is presumed that the procedure necessary to the legal adoption of legislation by a public legislative body has been followed." Smith v. Juillerat (1954), 161 Ohio St. 424,428 citing City of Youngstown v. Aiello (1951),156 Ohio St. 32, 37. Since Plaintiffs/Appellants have not raised any evidence to rebut the presumption of regularity, we must presume that the requirements listed in Article 8 of the Zoning Regulations for the creation of a PD-B2 district were complied with when the land was rezoned into PD-B2 in 1995.
 {¶ 22} Additionally, Article 8 provides several detailed provisions for creating a planned development, including public meetings, a review and approval process. Section 8.06, 8.11, 8.13, 8.14, 8.15. It is these procedures that Plaintiffs/Appellants argue were required to be complied with and yet failed to occur. However, all of these review and approval processes describing the options and requirements for the developer deal with the creation of a planned development. As evidence that these sections pertain to the creation of planned development district, section 8.01 of Article 8 states, "This Article is intended to permit the creation of Planned Development Districts." Further, section 8.14 provides that if the procedures listed in 8.06, 8.11, 8.13, 8.14 and 8.15 are complied with then if the application for rezoning is approved the area will be redesignated as either a "PD-O", "PD-B", or a "PD-I". Since the end result of following these procedures listed in 8.06, 8.11, 8.13, 8.14, and 8.15 is rezoning an area into a planned development, it is only logical that these sections describe the required procedures for the creation of a planned development district. Further, it would not be logical for a developer of an area to have to complete the same procedures for building a permitted use within an existing zone as a developer seeking to change the zoning on an area for their development. Therefore, we find that those procedures listed in 8.06, 8.11, 8.13, 8.14, and 8.15 pertain only to the creation of a planned development.
 {¶ 23} As the area was already zoned PD-B2, Wal-Mart and the Intervening Defendants merely sought to develop a permitted use within the already zoned area. Therefore, despite Plaintiffs/Appellants' arguments to the contrary, Defendants did not have to comply with the procedures listed in sections 8.06, 8.11, 8.13, 8.14, and 8.15 as they were not attempting to create a planned development district. Plaintiffs/Appellants have not pointed to any additional requirements in the Sugarcreek Township Zoning Resolution that were not complied with prior to the grant of the zoning permit. As such, we agree with the lower court that there is no evidence that the proposed expansion is in violation of a regulation or provision adopted by the board of township trustees. Therefore, no claim under R.C. 519.24 exists for Plaintiffs/Appellants and summary judgment was properly granted to the Defendants. Plaintiffs/Appellants' first assignment of error is without merit and is overruled.
Plaintiffs/Appellants' second assignment of error:
 {¶ 24} Plaintiffs/Appellants are appealing the trial court's grant of summary judgment to the Defendants asserting that the Wal-Mart development plans do not comply with the Sugarcreek Township Zoning Regulations regarding parking. We disagree.
 {¶ 25} The regulations pertaining to parking requirements in the PD-B2 zones are located in section 19.15 and 19.16 of the zoning regulations. Plaintiffs/Appellants assert that the proposed development plans did not properly calculate the number of spaces required by the Zoning Resolution. At the hearing, the Plaintiffs/Appellants presented an expert who testified that 1716 parking spaces were required. However, this expert based his calculation on hearsay evidence of the number of employees who would be employed at the grocery portion of the Wal-Mart. Therefore, the trial court disregarded this evidence. The trial court accepted the evidence of a Wal-Mart manager regarding the proposed number of employees typically hired at Wal-Mart's grocery stores. Further, another witness testified that 1,607 parking spaces could be readily available on the proposed Wal-Mart property. The magistrate stated that even if the court utilized the Plaintiffs/Appellants' expert's means of calculating the necessary number of employees when the number of employees given by the Wal-Mart manager is utilized, the total number of parking spaces needed is 1574. As this number was within the number of parking spaces that could be readily available on the proposed property, the lower court did not find a violation of the zoning regulations. We do not find that the trial court abused its discretion in determining that the Defendants' proposal substantially complied with the township's zoning resolution. Further, the lower court held that Defendants merely needed to submit a final proposal that conformed to the regulations prior to the expansion's completion. We agree.
 {¶ 26} Plaintiffs/Appellants second assignment of error is without merit and is overruled.
Plaintiffs/Appellants' third and fourth assignments of errorand Intervening Defendants/Cross-Appellants' first, second, andthird assignments of error
 {¶ 27} As a result of our determination of the first and second assignments of error, the lower court's grant of summary judgment is affirmed. As a result, Plaintiffs/Appellants third and fourth assignments of error and Intervening Defendants/Cross-Appellants first, second, and third assignments of error are rendered moot.
Intervening Defendants/Cross-Appellants' fourth assignment oferror:
 {¶ 28} The Intervening Defendants/Cross-Appellants argue that the lower court erred in denying their motion for attorney fees pursuant to R.C. 2323.51 without waiting for a responsive pleading or without holding a hearing. We disagree.
 {¶ 29} R.C. 2323.51(B)(2) states, "An award may be made pursuant to division (B)(1) of this section upon the motion of a party to a civil action * * *, but only after the court does all of the following: (a) Sets a date for a hearing * * *; (b) Gives notice of the date of the hearing * * *; and (c) Conducts the hearing * * *." We have previously stated that "R.C.2323.51(B)(2), by its express terms, does not mandate that an evidentiary hearing shall be held whenever a motion for fees is made, but only states that an evidentiary hearing is a necessary precondition to awarding fees." Sheridan v. Harbison (1995),101 Ohio App.3d 206, 212. In Sheridan, this Court adopted the position of the Court of Appeals for Franklin County that "[w]here the trial court determines that there is no basis for the imposition of sanctions, it may deny the motion without a hearing." Id. at 212 quoting Justice v. Lutheran Soc. Serv.
(1992), 79 Ohio App.3d 439, 444.
 {¶ 30} In the instant case, the Intervening Defendants filed a motion for attorney fees pursuant to R.C. 2323.51 and for its court costs pursuant to Rule 54(C). The trial court found that the Plaintiffs/Appellants' lawsuit did not amount to frivolous conduct and denied the R.C. 2323.51 motion without holding a hearing or waiting for a responsive pleading. As we said inSheridan, a trial court does not abuse its discretion in denying a R.C. 2323.51 motion for attorney fees without holding a hearing. Therefore, the trial court's denial of the Intervening Defendants/Cross-Appellants' R.C. 2323.51 motion for attorney fees based on its determination that Plaintiffs/Appellants had not engaged in frivolous conduct was not an abuse of discretion even though the court did not hold a hearing on the motion.
 {¶ 31} Civil Rule 54(D) provides, "Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." The phrase "unless the court otherwise directs" has been held to grant courts the discretion to order the prevailing party to endure part or all of their own costs.Vance v. Roedersheimer, 64 Ohio St.3d 552, 555, 1992-Ohio-24. Rule 54(D) does not provide an absolute right for court costs to be awarded to the prevailing party. State ex rel. Graville v.Fuerst (1986), 24 Ohio St.3d 12, 13. The decision to award or to decline to award costs is a matter within the discretion of the trial court and absent an abuse of discretion will not be reversed on appeal. Raab v. Wenrich, Montgomery App. No. 19066, 2002-Ohio-936. However, a trial court will be found to have abused its discretion when it declines to award costs to a prevailing party absent an explanation. Dyer v. Clark (May 5, 1992), Greene App. No. 91 CA 12, citing Walton CommercialEnterprises, Inc. v. Associations, Conventions, Tradeshows, Inc.
(Dec. 31, 1990), Franklin. App. 90AP-581; Cutlip v. Hill (Oct. 18, 1989), Wayne App. CA No. 2476.
 {¶ 32} In its decision, the trial court denied the motion stating that it did not find that the Plaintiffs/Appellants had engaged in frivolous conduct in prosecuting this case. Although the issue of whether the Plaintiffs/Appellants had engaged in frivolous conduct in pursuing this case was relevant to the motion based on R.C. 2323.51, it was not relevant to the trial court's decision denying the Intervening Defendants/Cross-Appellants' motion for costs pursuant to Civ. R. 54(D). The trial court had previously ordered court costs to be paid by Plaintiffs/Appellants, but denied the Intervening Defendant/Cross-Appellants' motion for costs expended for depositions and other litigation expenses pursuant to Civ. R. 54(D). The trial court did not provide any of its reasoning for denying this portion of the motion. As we stated in Dyer, it is an abuse of discretion for a trial court to deny a Civ.R. 54(D) motion for costs absent an explanation. In this case, the trial court failed to provide any explanation relevant to Civ.R. 54(D) regarding its denial of the motion for costs. As such, we have no choice but to reverse the judgment of the trial court and remand the matter to the trial court to determine the Intervening Defendants/Cross-Appellants' motion based on Civ.R. 54(D), providing an explanation for its decision.
 {¶ 33} Intervening Defendants/Cross-Appellants' fourth assignment of error is sustained in part and overruled in part.
 {¶ 34} The judgment of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
Brogan, J. and Grady, J., concur.
[1] The zoning officer who issued the permit was subsequently discovered to have stolen several zoning permit fees including the fee paid by R.G. Properties for the permit at issue in this case.